FILED
2019 Aug-02 PM 03:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| RODNEY WAYNE PATTERSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No.: 5:18-cv-2059-MHH-JEO |
| ) | |
| WARDEN DEWAYNE ESTES, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM OPINION**

In this habeas action, Mr. Patterson seeks relief from his state court conviction for attempted murder. On April 25, 2019, the magistrate judge filed a report in which he recommended that the Court dismiss Mr. Patterson's § 2254 petition as untimely under AEDPA. (Doc. 12).[1] On May 20, 2019, Mr. Patterson filed objections to the report and recommendation. (Doc. 15). Mr. Patterson argues that the Court should not dismiss his petition as untimely because he is entitled to equitable tolling. (Doc. 15).

A district court "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party objects to a report and recommendation, the district court must "make

---

[1] Mr. Patterson used a 28 U.S.C. § 2241 form to initiate this action, but the contents of his petition indicate that he seeks relief from a state court conviction pursuant to § 2254. (Doc. 1, pp. 1, 2).

a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district court also reviews propositions of law *de novo*. *Garvey v. Vaughn*, 993 F.2d 776, 779 n.9 (11th Cir. 1993); *see also Macort v. Prem, Inc.*, 208 Fed. Appx. 781, 784 (11th Cir. 2006).

Mr. Patterson correctly points out that "the AEDPA 'statute of limitations defense ... is not 'jurisdictional'' and does not set forth "an inflexible rule requiring dismissal whenever" its "clock has run." *Holland v. Florida*, 560 U.S. 631, 645 (2010) (citing *Day v. McDonough,* 547 U.S. 198, 203, 205 (2006)). In *Holland*, the Supreme Court stated:

> We have previously made clear that a nonjurisdictional federal statute of limitations is normally subject to a "rebuttable presumption" in *favor* "of equitable tolling." *Irwin,* 498 U.S., at 95–96, 111 S.Ct. 453; *see also Young v. United States,* 535 U.S. 43, 49, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) ("It is hornbook law that limitations periods are 'customarily subject to "equitable tolling"'" (quoting *Irwin, supra,* at 95, 111 S.Ct. 453)). In the case of AEDPA, the presumption's strength is reinforced by the fact that "'equitable principles'" have traditionally "'governed'" the substantive law of habeas corpus, *Munaf v. Geren,* 553 U.S. 674, 693, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008), for we will "not construe a statute to displace courts' traditional equitable authority absent the 'clearest command,'" *Miller v. French,* 530 U.S. 327, 340, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 705, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)). The presumption's strength is yet further reinforced by the fact that Congress enacted AEDPA after this Court decided *Irwin* and therefore was likely aware that courts, when interpreting AEDPA's timing provisions, would apply

2

the presumption. See, *e.g., Merck & Co. v. Reynolds,* 559 U.S. 633, 648, 130 S.Ct. 1784, 1795 – 1796 (2010).

560 U.S. at 645-46. To be entitled to equitable tolling, Mr. Patterson must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Mr. Patterson bears the burden of proving that he is entitled to equitable tolling. *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011); *Chavez v. Secy. Fla. Dept. of Corr.*, 647 F.3d 1057, 1072 (11th Cir. 2011).

Mr. Patterson asserts that after his conviction in 2013, he retained his trial counsel, Tim Case, for an appeal. (Doc. 15, p. 3). After the Alabama Supreme Court denied his petition for a writ of certiorari in May 2015, Mr. Patterson paid Mr. Case $10,000.00 to continue to represent him. (Doc. 15, p. 3). Mr. Patterson asserts that he "stayed in regular contact with attorney Case as to the status of the appeals." (Doc. 15, p. 3). Throughout, Mr. Patterson was in jail. (Doc. 15, p. 1).

Mr. Patterson contends that as time passed, Mr. Case gave him "several reasons" why there had been no further action in his appellate process. (Doc. 15, p. 3). On December 7, 2016, Mr. Case wrote Mr. Patterson a letter noting that he and another attorney had recently met with Mr. Patterson at Easterling Correctional Facility and explained to Mr. Patterson the status of his case and what services they

were to render. (Doc. 15, p. 11). Mr. Case, in fact, took no other action "in the appellate process." (Doc. 15, p. 3).

On September 25, 2017, in a letter addressed to Mr. Patterson and Wilma Bradford, Mr. Case stated that Mr. Patterson had exhausted his state court appeal remedies, but Mr. Case was pursuing a Rule 32 petition for Mr. Patterson based on jurisdictional grounds and/or new evidence. (Doc. 15, p. 12). Mr. Case asked Ms. Bradford to contact his office to discuss the matter further. (Doc. 15, p. 12). Mr. Patterson correctly points out that when Mr. Case wrote this letter, it was too late for him to file a Rule 32 petition on behalf of Mr. Patterson. (Doc. 15, p. 4).

Mr. Patterson asserts that "after further conversation(s) and inquiry(s) by Patterson as to the status of any Rule 32 petition," he insisted Mr. Case return the $10,000.00 fee he paid Mr. Case in 2015. (Doc. 15, p. 4). On July 20, 2018, Mr. Case issued a $10,000.00 check to Wilma Bradford. (Doc. 15, p. 13). Thereafter, Mr. Patterson began preparing a Rule 32 petition. He filed the petition in the Lawrence County Circuit Court on September 17, 2018. (Doc. 15, pp. 2, 4). Mr. Patterson then filed his federal § 2254 petition in this Court on December 10, 2018. (Doc. 1, p. 18).

Mr. Patterson argues that he should not be faulted for failing to act on his own behalf between May 2015 (when the Alabama Supreme Court denied his petition for

writ of certiorari) and December 2018 (when he filed this § 2254 habeas petition) because he had "every reasonable expectation" and "every reason to believe" that Mr. Case was pursuing his post-conviction claims, when Mr. Case had, in fact, effectively abandoned him "for a period of approximately three (3) years." (Doc. 15, pp. 5- 6). Mr. Patterson explains that he was "unfamiliar and unaware of the time limitations involved, and not knowledgeable as to the law, trusted his attorney." (Doc. 15, p. 5). Mr. Patterson contends that his attorney, Mr. Case, intentionally misled him, particularly with respect to his (the attorney's) efforts to pursue a Rule 32 petition on Mr. Patterson's behalf. (Doc. 15, pp. 5, 7).

Under agency principles, a party typically is bound by the acts of his lawyer, such that attorney filing errors and other negligence on the lawyer's part in post-conviction proceedings generally cannot constitute "cause" to excuse a procedural default. *See Maples v. Thomas*, 565 U.S. 266, 280-81 (2012). Rather, a petitioner must show that his attorney's conduct rises to the level of abandonment. *Maples*, 565 U.S. at 282-83.

Mr. Patterson relies on *Mackey v. Hoffman* and *Maples v. Thomas* to support his contention that he is entitled to equitable tolling because Mr. Case effectively abandoned him. *Mackey*, 682 F.3d 1247 (9th Cir. 2012); *Maples*, 565 U.S. at 266. In *Mackey*, the Ninth Circuit Court of Appeals held that Mr. Mackey's attorney, who

5

failed to notify the federal district court of his intention to withdraw, "inexcusably and grossly neglected" his obligation to his client. 682 F.3d at 1253. The attorney's failure to notify the court of his intent to withdraw left Mr. Mackey without information about court proceedings because Mr. Mackey could not personally receive court notifications while he was represented by counsel. Consequently, Mr. Mackey, an indigent prisoner seeking relief from his state court conviction and sentence, was "misled by his attorney to believe that he was awaiting a trial or hearing date and believed that his attorney was continuing to represent him, [and] was wholly unaware that the district court had denied his § 2254 petition." 682 F.3d at 1253. The Court of Appeals held that Mr. Mackey's attorney's conduct "amount[ed] to attorney abandonment in every meaningful sense . . ." 682 F.3d at 1253.[2]

In *Maples*, the Supreme Court held that Mr. Maples's attorneys abandoned him when the attorneys left the firm that represented Mr. Maples. No one notified Mr. Maples, and under Alabama law, he had no right to receive notice of filings and orders personally because he was represented by counsel. 565 U.S. at 283-89; 565 U.S. at 284 ("By failing to seek permission to withdraw, Munanka and Ingen–Housz allowed the court's records to convey that they represented Maples. As listed attorneys of

---

[2] The abandonment discussion in *Mackey* arises in the context of Mr. Mackey's effort to have his appeal rights reinstated. Because of Mr. Mackey's attorney's conduct, Mr. Mackey did not receive notice when the district court denied his § 2254 petition. 682 F.3d at 1253-54.

record, they, not Maples, would be the addressees of court orders Alabama law requires the clerk to furnish."). Under these circumstances, the principal-agent relationship was severed, and the attorneys' acts or omissions could not be attributed to Mr. Maples, given that Mr. Maples had no reason to know that his attorneys of record were not, in fact, representing him. *Maples*, 565 U.S. at 283-89. Mr. Maples had "[no] warning that he had better fend for himself." 565 U.S. at 288. The Supreme Court concluded: "Given no reason to suspect that he lacked counsel able and willing to represent him, Maples surely was blocked from complying with the State's procedural rule." 565 U.S. at 289. Mr. Maples had "no reason to suspect that, in reality, he had been reduced to *pro se* status. Maples was disarmed by extraordinary circumstances quite beyond his control." 565 U.S. at 289.

The Supreme Court has held that attorney misconduct sufficiently egregious to warrant equitable tolling is not limited to "bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part." *See Holland,* 560 U.S. at 649. But an attorney's miscalculation of the statute of limitations period is not an extraordinary circumstance for equitable tolling purposes. *See Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007).

In *Cadet v. Florida Department of Corrections*, 853 F.3d 1216 (11th Cir. 2017), the Eleventh Circuit held that "attorney negligence, even gross or egregious

7

negligence, does not by itself qualify as an 'extraordinary circumstance' for purposes of equitable tolling; either abandonment of the attorney-client relationship,…or some other professional misconduct or some other extraordinary circumstance is required." *Cadet,* 853 F.3d at 1227. The Eleventh Circuit suggested that, to prove abandonment, a petitioner generally must demonstrate that the attorney "withdr[e]w from representing [the petitioner], renounce[d] his role as counsel, utterly shirk[ed] all of his professional responsibilities to [the petitioner], or walk[ed] away from their attorney-client relationship." *Cadet,* 853 F.3d at 1234.

Here, the record reflects that Mr. Case did not file a Rule 32 petition on Mr. Patterson's behalf before the state law deadline for the petition expired. (Doc. 15, pp. 14-16). That, at a minimum, is negligent conduct. But there is more. Mr. Case affirmatively represented to Mr. Patterson that he was continuing to pursue appellate and post-trial relief when he was, in fact, doing nothing and allowing the deadline for post-trial challenges to expire, all the while demanding fees. (Doc. 15, pp. 11-16). The magistrate judge properly found that "the Alabama Supreme Court denied Mr. Patterson's petition for writ of certiorari on May 15, 2015, and the [Alabama] Court of Criminal Appeals entered a certificate of judgment on the same day." (Doc. 12, p. 8). Remarkably, 28 months later, Mr. Patterson's attorney wrote to him and to Ms. Bradford:

8

> As you know, we have exhausted our State Court remedies regarding the appeal of our case. However, there is another avenue I am pursuing by and on behalf of [Mr. Patterson]. I explained this to [Mr. Patterson] in our last meeting while he was in prison. I am pursuing a Rule 32 Petition based upon jurisdictional grounds and/or new evidence . . . I know this is a long and drawn out process. However, this is a very serious and complicated case that involves numerous issues. I trust that you understand and agree.

(Doc. 15, p. 12).[3]

Mr. Case required and received a $10,000.00 check from Mr. Patterson to represent him throughout the appellate process. (Doc. 15, p. 3). Mr. Case represented that he was working on a Rule 32 post-conviction petition for Mr. Patterson eight to ten months after the time for filing expired. (Doc. 15, p. 12). Mr. Case told Mr. Patterson that he was pursuing viable avenues of relief, when those options no longer existed, and Mr. Case urged Mr. Patterson to "understand and agree" to his efforts. (Doc. 15, pp. 11-16). The Court does not have enough information about Mr. Case's conduct to allow the Court to determine whether Mr. Case was merely negligent or whether his conduct was sufficiently deficient to toll the statute of limitations. Accordingly, the Court will schedule an evidentiary hearing to explore evidence of Mr. Case's conduct. *See Scott v. United States*, 325 Fed. Appx. 822, 824 (11th Cir.

---

[3] Hand-written notes at the bottom of this letter indicate that someone, most likely either Mr. Patterson or Ms. Bradford, tried to call Mr. Case in October of 2017 or 2018 and in June of 2018. (Doc. 15, p. 12).

2009) ("A movant is entitled to an evidentiary hearing whenever he alleges facts which, if taken true, would entitle him to relief."). Mr. Patterson contends that he "stayed in regular contact with attorney Case" concerning the status of his appellate process. (Doc. 15, p. 3). An evidentiary hearing will enable the Court to determine the extent of Mr. Patterson and Mr. Case's communication.

**DONE** this 2nd day of August, 2019.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE