FILED
2022 Jun-28  AM 08:14
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| RODNEY WAYNE PATTERSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No.: 5:18-cv-02059-MHH-JEO |
| v. | ) | |
| | ) | |
| WARDEN DEWAYNE ESTES, | ) | |
| | ) | |
| Respondent. | | |

## MEMORANDUM OPINION

Pursuant to 28 U.S.C. § 2254, petitioner Rodney Patterson seeks federal habeas relief from his state court conviction for attempted murder. (Doc. 1). The Court held an evidentiary hearing to determine whether the circumstances surrounding Mr. Patterson's state court proceedings delayed his effort to seek federal habeas relief, such that the Court may reach the merits of his petition and treat the petition as though Mr. Patterson filed it before the statutory deadline. The principle of equitable estoppel enables a district court to consider the merits of a habeas petition that is untimely on its face.

In this opinion, to determine whether Mr. Patterson has demonstrated that he may have the benefit of equitable tolling, the Court first describes the state and

federal proceedings relevant to Mr. Patterson's tolling argument. Then, the Court describes the evidence that the parties introduced at the evidentiary hearing. Finally, the Court discusses the law that governs the issue of equitable tolling, and the Court applies that law to the evidence.

## I.

In August of 2013, a jury in the Circuit Court of Lawrence County, Alabama found Mr. Patterson guilty of attempted murder. (Doc. 12-8). In October of 2013, the trial court sentenced Mr. Patterson to life in prison. (Doc. 12-7). Mr. Patterson appealed his conviction and sentence to the Alabama Court of Criminal Appeals. (Doc. 25-1). In March of 2015, the Court of Criminal Appeals affirmed his conviction and sentence. (Doc. 4-3). On May 15, 2015, the Alabama Supreme Court denied Mr. Patterson's petition for a writ of certiorari. (Doc. 4-4). Mr. Patterson did not seek review in the United States Supreme Court. (Doc. 29, pp. 50-51; Doc. 34, p. 2). Therefore, Mr. Patterson's state court judgment became final on August 13, 2015, 90 days after the Alabama Supreme Court entered its certificate of judgment on Mr. Patterson's direct appeal. Mr. Patterson's deadline for filing a federal habeas petition began running one day later on August 14, 2015 and expired one year after that on August 14, 2016.[1]

---

[1] *See Green v. Sec'y, Dep't of Corr.*, 877 F.3d 1244, 1247 n.3 (11th Cir. 2017) ("The limitation period began to run the day after the conviction and sentence became final . . . .").

On September 17, 2018, Mr. Patterson filed a *pro se* Rule 32 petition in the Circuit Court of Lawrence County. (Doc. 12-2). On January 17, 2019, the Circuit Court dismissed Mr. Patterson's petition, finding, among other things, that the petition was time-barred. (Doc. 11, pp. 2-3). Mr. Patterson appealed to the Alabama Court of Criminal Appeals. (Doc. 12-1). On October 9, 2019, the Court of Criminal Appeals dismissed his appeal "for Failure to File Brief." (Doc. 34-1, p. 1). In its dismissal order, the Court of Criminal Appeals explained that it was dismissing Mr. Patterson's appeal "for failure by the appellant to file a brief after notice of this deficiency." (Doc. 34-1, p. 2).

On December 13, 2018, while his Rule 32 petition was pending in state court, Mr. Patterson filed in this federal court a *pro se* petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. (Doc. 1). The Magistrate Judge assigned to this case reviewed Mr. Patterson's petition and issued a report in which he determined that Mr. Patterson's federal habeas petition was untimely. (Doc. 12). The Magistrate Judge recommended dismissal of this habeas proceeding pursuant to 28 U.S.C. § 2244. (Doc. 12, p. 10).

Mr. Patterson objected to the Magistrate Judge's report. (Doc. 15). Mr. Patterson argues that he is entitled to equitable tolling because his attorney, Timothy Case, behaved egregiously when he "intentionally misled" and "constructively abandoned" Mr. Patterson during Mr. Patterson's state court appeal. (Doc. 15, p. 7).

Mr. Patterson argues that while Mr. Case held himself out as his attorney and required payment of fees, Mr. Case took no action to achieve post-conviction relief, and Mr. Case allowed the deadline for post-conviction challenges to expire. (Doc. 15, p. 4). The Court scheduled an evidentiary hearing "to explore evidence of Mr. Case's conduct" and "to determine whether Mr. Case was merely negligent or whether his conduct was sufficiently deficient to toll the statute of limitations." (Doc. 16, p. 9).

Before the hearing, Warden Estes's attorney supplemented the record with Mr. Patterson's state court records for his direct appeal and his Rule 32 petition, (Docs. 25-27, 25-28), the Alabama Court of Criminal Appeals' order finding Mr. Patterson's Rule 32 appeal brief delinquent, (Doc. 25-29), the Alabama Court of Criminal Appeals' order dismissing Mr. Patterson's Rule 32 petition, (Doc. 25-30), and the Certificate of Judgment from the Alabama Court of Criminal Appeals, (Doc. 25-31).

On January 9, 2020, the Court held an evidentiary hearing. (Doc. 29, p. 1). Mr. Patterson's mother, Wilma Bradford, and Mr. Case testified at the hearing. (Doc. 29, p. 2). The Court admitted into evidence Ms. Bradford's phone records; receipts from Mr. Case to Mr. Patterson and Ms. Bradford; Mr. Case's letters to Mr. Patterson, Ms. Bradford, and the Warden at Easterling Correctional Facility; Mr. Case's interoffice phone messages; Mr. Patterson's letters to Mr. Case; and a case

action summary of Mr. Patterson's state court case.  (Docs. 27, 28).  Following the hearing, the Court granted Mr. Patterson's unopposed motion to supplement Ms. Bradford's phone records, (Docs. 30, 31); Mr. Patterson filed a supplemental brief, (Doc. 34); and the Government filed a response.  (Doc. 39).[2]

## II.

The evidence establishes that Tim Case and Chris Malcolm represented Mr. Patterson at his state court trial for attempted murder.  (Doc. 29, p. 15).  Ms. Bradford paid Mr. Malcolm $11,000 for his services, (Doc. 29, p. 16), and she paid Mr. Case $20,000 for his services, (Doc. 29, p. 119).[3]  Ultimately, a jury found Mr. Patterson guilty, and in October 2013, he was sentenced to life in prison.  (Doc. 12-7; Doc. 29, pp. 13-14).

Mr. Case represented Mr. Patterson when Mr. Patterson challenged his conviction and sentence in the Alabama Court of Criminal Appeals.  (Doc. 29, p. 17;

---

[2] Mr. Patterson filed his § 2254 petition *pro se*.  (Doc. 1).  After the Court set this matter for an evidentiary hearing, Mr. Patterson filed a motion to appoint counsel.  (Doc. 17).  The Court appointed the Federal Public Defender to represent Mr. Patterson at the evidentiary hearing.  (Doc. 18).  The Federal Public Defender prepared and filed Mr. Patterson's supplemental brief.

Through his attorney, Mr. Case, based on his "interest in these proceedings," filed a motion to submit case law that he believes supports his handling of Mr. Patterson's case.  (Doc. 46; Doc. 46, p. 2). The Court denied the motion.  (Doc. 48).

[3] Ms. Bradford testified that she paid Mr. Malcolm $11,000 for his services, and she paid Mr. Case $25,000.  (Doc. 29, pp. 15-16).  Mr. Case testified that he charged Mr. Patterson a flat fee of $20,000 to represent him at trial.  (Doc. 29, p. 49).  Mr. Case testified that Ms. Bradford paid him $5,000 before trial, and she paid $15,000 after the trial.  (Doc. 29, p. 119).

*see also* Doc. 4-1, pp. 1, 22).  After the Alabama Court of Criminal Appeals affirmed Mr. Patterson's conviction and sentence, Mr. Case prepared a petition for writ of certiorari to the Alabama Supreme Court.  (Doc. 28-5, p. 2; Doc. 29, p. 51).

On March 18, 2015, approximately two weeks after the Alabama Court of Criminal Appeals affirmed Mr. Patterson's conviction, (Doc. 4-3, p. 1), Mr. Case reached out to Ms. Bradford and Mr. Patterson to ask whether Mr. Patterson wished to pursue a petition for habeas corpus relief in federal court, (Doc. 28-5, pp. 1, 2; *see also* Doc. 29, pp. 19-20).  Mr. Case told Ms. Bradford that his fee for representing Mr. Patterson in a federal habeas proceeding was $15,000.  (Doc. 29, p. 23; *see also* Doc. 28-2).  In April of 2015, Ms. Bradford retained Mr. Case, and she paid Mr. Case $10,000 to represent Mr. Patterson in federal court.  (Doc. 29, p. 22; *see also* Doc. 28-5, p. 3; Doc. 28-2).

After Ms. Bradford paid Mr. Case $10,000 to pursue federal habeas relief for Mr. Patterson, Mr. Case was unavailable when Ms. Bradford would call him to discuss Mr. Patterson's case.  (Doc. 29, p. 24).  A summary of Ms. Bradford's telephone records for the relevant time period indicates that Ms. Bradford called Mr. Case nine times from May 18, 2015 through June of 2015.  (Doc. 30-7, p. 1).  Mr.

Case was not available when she called; Ms. Bradford typically spoke to Jessica West, Mr. Case's assistant. (Doc. 29, pp. 24, 31).[4]

On May 15, 2015, the Supreme Court of Alabama denied Mr. Patterson's petition for a writ of certiorari. (Doc. 4-4). A May 18, 2015 telephone message for Mr. Case from Mr. Patterson at 1:46 p.m. states that Mr. Patterson received Mr. Case's letter "about Supreme Court denying Petition, said to please call his mom and tell her the next step . . ." (Doc. 28-6, p. 1). Ms. Bradford called Mr. Case a few minutes later, and she called him at least weekly in June. (Doc. 30-7, p. 1). Ms. Bradford's telephone records indicate that Mr. Case did not call Ms. Bradford to discuss Mr. Patterson's case until July 13, 2015. Ms. Bradford spoke with Mr. Case's office for five minutes that day, a comparatively long call. (Doc. 30-7, p. 1). Two weeks later, Ms. Bradford called Mr. Case's office and paid by credit card another $4,000 for Mr. Case's representation of Mr. Patterson. (Doc. 28-3, p. 1; Doc. 29, p. 52). Mr. Case acknowledges that the $4,000 payment was toward the $15,000 fee that Mr. Case quoted Ms. Bradford in April 2015 for his continued representation of Mr. Patterson. (Doc. 29, p. 53; *see also* Doc. 28-2).

---

[4] One call lasted three minutes; the others lasted one or two minutes. (Doc. 30-7, p. 1; *see also* Doc. 29, p. 31). Ms. Bradford's complete telephone records for the period at issue appear in Docs. 30-1 through 30-6. (*See* Doc. 29, pp. 25-29). Those records include incoming calls from Mr. Case to Ms. Bradford. The longest incoming call from Mr. Case was an eight-minute call on April 18, 2015. (Doc. 30-7, p. 1). The following day, Ms. Bradford paid Mr. Case $10,000. (Doc. 28-2).

Following the July 31, 2015 payment, from August of 2015 through December of 2016, Mr. Patterson and Ms. Bradford frequently tried to reach to Mr. Case for updates.  (Doc. 30-7, pp. 2-3).  On September 12, 2016, Mr. Patterson wrote a letter to Mr. Case expressing his frustration about Mr. Case's lack of communication, stating:

> I sent you one letter Did not here [*sic*] back from you Cant [*sic*] seem to get you on the phone Can you send me a letter back Let me no [*sic*] what's going on about getting me out of here Tell me what you got going for me  So really I need to no [*sic*] what ?? When ??? & How. Can you do that in a letter or come & see me pleace. [*sic*] . . . P.S. I no [*sic*] you are working on my case It just been a long 3 years – I need out of here

(Doc. 28-8, p. 1).

Ms. Bradford called Mr. Case 40 times between August 1, 2015 and December 2016; she received two calls from Mr. Case's office between August 1, 2015 and December 1, 2016, and she received two calls from Mr. Case's office in December 2016.  (Doc. 30-7, pp. 2-3).  Ms. Bradford testified that she made "[a]pproximately 20" appointments with Mr. Case, but she never had an opportunity to meet with him.  (Doc. 29, p. 36-37).  Ms. West consistently called and cancelled or rescheduled those appointments.  (Doc. 29, p. 36).  On one occasion, Billy Jackson, Mr. Case's associate, met with Ms. Bradford.  (Doc. 29, p. 37).  Ms. Bradford ended the meeting because she did not want to discuss Mr. Patterson's case with Mr. Jackson because he was not Mr. Patterson's attorney.  (Doc. 28, p. 37).  Ms.

Bradford also appeared at Mr. Case's office without an appointment to try to discuss with him the work he was doing for Mr. Patterson, but to no avail.  (Doc. 29, pp. 34-35).

Mr. Case testified that he tried to visit Mr. Patterson in 2016.  Mr. Case presented three letters that he said he wrote to the warden at Easterling Correctional. The letters bear dates in June, October, and November of 2016.  (Doc. 28-7, pp. 1-3).  Mr. Case met Mr. Patterson once in 2016.[5]  A letter dated December 7, 2016 recaps the visit.  (Doc. 28-5, p. 4).  Mr. Case wrote that at the visit, he "explained . . . the status and nature of [Mr. Patterson's] case and what [he was] doing . . . at this time."  (Doc. 28-5, p. 4).  Mr. Case continued:  "It is my impression you understand and agree.  If you have any further questions and/or concerns, then please do not hesitate to contact me."  (Doc. 28-5, p. 4).  At the evidentiary hearing Mr. Case testified that during this 2016 meeting, he explained to Mr. Patterson that he was working on a Rule 32 petition and waiting for newly discovered evidence. (Doc. 29, p. 89).[6]  Mr. Case testified that he told Mr. Patterson that filing a federal habeas petition was not a good idea.  (Doc. 29, pp. 89-90).

---

[5] Mr. Case thinks he may have met with Mr. Patterson twice, but he is not certain that the second meeting occurred.  (Doc. 29, p. 123).

[6] At the evidentiary hearing, Mr. Case testified that he had suspected that Jerome Theodorie, a witness at Mr. Patterson's criminal trial, gave his testimony as part of a plea deal for pending charges that Mr. Theodorie had in another county.  (Doc. 29, p. 102).  Mr. Case believed he had to wait until the charges against Mr. Theodorie were resolved to pursue this theory of newly-discovered evidence.  (Doc. 29, p. 117).  Mr. Case also suspected that Mr. Theodorie had lied in

There is no evidence that Mr. Case contacted Mr. Patterson during the first six months of 2017. Ms. Bradford called Mr. Case's office nine times. Consistent with Ms. Bradford's testimony, calls during this period from Mr. Case's office to her telephone number lasted one to two minutes, evidencing brief communication with no substantive content regarding Mr. Case's efforts to pursue collateral relief for Mr. Patterson. (Doc. 30-7, p. 3). In a letter to Mr. Case dated May 29, 2017, Mr. Patterson wrote:

> I have called but can not [sic] get you on the phone. Tim about a 1 ½ [years] ago I give you 10,000 You where [sic] going to file something to the fedal [sic] court. You did not think it was a good [idea]. You said in Dec. that you were triing [sic] something else at the 1st of the year Now it's 6 months later Have still not heard from you . . . Need to here [sic] from you today . . . I will give you a few days to get me back something in the mail. I need to no [sic] what why and how????
>
> P.S. Tim if you can not [sic] help me let me no [sic]

(Doc. 28-8, p. 3) (emphasis omitted).

Between June 1, 2017 and September 22, 2017, Ms. Bradford called Mr. Case nine times; she received three call from Mr. Case's office. (Doc. 30-7, p. 3). With one exception, no call lasted more than two minutes. (Doc. 30-7, p. 3). On September 22, 2017, Ms. Bradford spoke with Jessica West for four minutes. (Doc. 30-7, p. 3). Ms. Bradford testified that she read on the internet that Mr. Case had

---

his testimony and was hopeful that he would recant. (Doc. 29, pp. 102-03). Mr. Case did nothing to develop this purported newly-discovered evidence. Mr. Case simply waited to see what Mr. Theodorie would do. (Doc. 29, pp. 82, 102-03, 116-17).

taken other people's money, but he had not done work for them.  She spoke with

Ms. West about her concerns and asked Ms. West to ask Mr. Case to get in touch

with her.  (Doc. 29, p. 39; Doc. 30-7, p. 3).

On September 25, 2017, Mr. Case sent Ms. Bradford a letter regarding her

conversation with Ms. West.  (Doc. 28-9; Doc. 29, p. 39).  Mr. Case stated that he

was doing the best he could for his clients.  (Doc. 28-9).  In a letter to Ms. Bradford

and Mr. Patterson, also dated September 25, 2017, Mr. Case wrote:

> As you know, we have exhausted our State Court remedies regarding
> the appeal of his case.  However, there is another avenue I am pursuing
> by and on behalf of Rodney.  I explained this to Rodney at our last
> meeting while he was in prison.  I am pursuing a Rule 32 Petition based
> on jurisdictional grounds and/or new evidence.  If you will, please
> contact my office to come in and meet with my office staff or myself
> so we may discuss this matter further.  I know this is a long and drawn
> out process.  However, this is a very serious and complicated case that
> involves numerous issues.  I trust that you understand and agree.

(Doc. 28-5, p. 5).

Ms. Bradford called Mr. Case's office five times in October of 2017, and she

received two calls in return.  No call lasted more than two minutes.  (Doc. 30-7, pp.

3-4).  Ms. Bradford called Mr. Case's office four more times before the end of 2017,

and she received no calls in return.  One call lasted four minutes; the balance of the

calls lasted two minutes.  (Doc. 30-7, p. 4).  Between January 2018 and late May of

2018, Ms. Bradford called Mr. Case's office eleven times.  No call exceeded two

minutes.  (Doc. 30-7, p. 4).  Mr. Case or someone in his office called Ms. Bradford

four times in that five-month period.  One call lasted seven minutes, another six minutes, another two minutes, and another one minute.  (Doc. 30-7, p. 4).

On June 1, 2018, Mr. Case sent his associate, Billy Jackson, to visit Mr. Patterson in jail.  (Doc. 29, pp. 108, 110, 118).  Mr. Patterson asked Mr. Jackson for a refund.  (Doc. 29, p. 110).  Ms. Bradford also requested a refund from Mr. Case because "[she] paid $10,000 and got nothing.  Got no response.  Nothing.  [Mr. Case] did nothing."  (Doc. 29, p. 42).  After threatening to bring a local news station to Mr. Case's office, Ms. Bradford received a call from Ms. West telling her that she could come to the office to pick up a check.  (Doc. 29, p. 41).  Mr. Case issued to Ms. Bradford a $10,000 check dated July 20, 2018, refunding $10,000 of the $14,000 she had paid Mr. Case to file a federal habeas petition for Mr. Patterson.  (Doc. 28-4).  Ms. Bradford submitted the check to a credit union the same day.  (Doc. 28-4).

On September 17, 2018, Mr. Patterson, proceeding *pro se*, filed a Rule 32 petition.  (Doc. 12-2, pp. 1, 10).  Mr. Patterson, proceeding *pro se*, filed a federal § 2254 habeas petition dated December 10, 2018.  (Doc. 1, p. 18).

## III.

The overwhelming evidence in this case demonstrates that Mr. Case was not merely negligent in his representation of Mr. Patterson in his state court proceedings. Rather, Mr. Case deceived Mr. Patterson and his mother and engaged in conduct that jeopardized Mr. Patterson's state court efforts to obtain relief from his conviction

and sentence.  Consequently, Mr. Patterson has demonstrated that he is entitled to equitable tolling of the one-year limitation period for his federal habeas petition.

As the Court stated in an earlier opinion in this case, under 28 U.S.C. § 2244(d), a "1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court."  28 U.S.C. § 2244(d)(1); *see* Doc. 12, p. 7.  Several events may trigger the one-year period.  The trigger date in this case is the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  In *Holland v. Florida*, 560 U.S. 631 (2010), the Supreme Court of the United States held that a district court may excuse a petitioner's delay in pursuing habeas relief but only if the petitioner demonstrates that he was "pursuing his rights diligently" and that "some extraordinary circumstances stood in his way."  *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

The diligence prong of the *Holland* test embodies a reasonableness standard. *Downs v. McNeil*, 520 F.3d 1311, 1323 (11th Cir. 2008).  To satisfy the diligence requirement, a prisoner does not have to "'undertake repeated exercises in futility'" or "'exhaust every imaginable option.'"  *Downs*, 520 F.3d at 1323 (quoting *Aron v. United States*, 291 F.3d 708, 712 (11th Cir. 2002) (examining the diligence standard under § 2255)).  The diligence inquiry "'is an individualized one'" that must account

13

for "'the conditions of confinement and the reality of the prison system.'" *Downs*, 520 F.3d at 1323 (quoting *Aron*, 291 F.3d at 712).

Mr. Patterson has satisfied the diligence prong of the *Holland* test; he has demonstrated that he was reasonably diligent in his pursuit of post-conviction relief, given the limits imposed on him by his confinement. Mr. Patterson was placed in the Lawrence County Jail after a jury convicted him of attempted murder. (Doc. 29, p. 14). After sentencing, Mr. Patterson transferred to a state prison. (Doc. 29, p. 15). While imprisoned, Mr. Patterson continuously tried to communicate with his post-conviction attorney, Mr. Case, by telephone and by letter. Because incarceration limited Mr. Patterson's ability to communicate with Mr. Case, Mr. Patterson enlisted his mother to assist him. Ms. Bradford testified that Mr. Patterson called her almost daily, and he asked her "to call [Mr. Case] to see if he was working on the case." (Doc. 29, pp. 18-19).[7]

Ms. Bradford's phone records reflect that she called Mr. Case 96 times between 2015 and 2018. Someone from Mr. Case's office, typically Mr. Case's assistant, Ms. West, called Ms. Bradford 34 times during the three-year period. (Doc. 30-7; *see also* Doc. 29, p. 19). Ms. Bradford testified that she rarely reached

---

[7] Mr. Patterson may not receive incoming calls in prison. (Doc. 29, p. 18).

Mr. Case:  "[m]ost of the time when [she] called, [she] didn't get to talk to him; he wasn't available."  (Doc. 29, p. 19).

Importantly, Ms. Bradford's telephone records demonstrate that she called Mr. Case's office 49 times before the one-year statute of limitations for Mr. Case's federal habeas petition expired on August 14, 2016.  (*See* p. 2 above and Doc. 30-7, pp. 1-2).  Interoffice memos from Mr. Case's law firm indicate that on May 18, 2015, Ms. West notified Mr. Case that Mr. Patterson "received your letter about Supreme Court denying Petition" and that Mr. Patterson called and asked Mr. Case to "please call his mom and tell her the next step and she can tell him."  (Doc. 28-6, p. 1).  Ms. West notified Mr. Case that, on July 10, 2015, Ms. Bradford called and asked to get a status update on Mr. Patterson's case, and, on August 27, 2015, Ms. Bradford called and asked Mr. Case to give her a call.  (Doc. 28-6, pp. 2-3).  Mr. Patterson called on September 8, 2015.  Ms. West "told [Mr. Patterson] that [Mr. Case is] working on his case."  (Doc. 28-6, p. 4).  Mr. Patterson left a message with Ms. West for Mr. Case on November 5, 2015 asking Mr. Case to "please call."  (Doc. 28-6, p. 5).  Ms. Bradford followed up a month later asking if Mr. Case "could give her a call [regarding] Rodney Patterson."  (Doc. 28-6, p. 6).  On June 14, 2016, Ms. Bradford called, and Ms. West informed Mr. Case that Ms. Bradford was "getting upset" and would like to discuss Mr. Patterson.  (Doc. 28-6, p. 7).  Nine days later, Ms. Bradford called to give the phone number for the correctional facility where Mr. Patterson was

housed.  She asked that Mr. Case call to set up a time to see Mr. Patterson.  (Doc. 28-6, p. 8).  Mr. Patterson called on July 19, 2016 and asked if Mr. Case "could please call [Ms. Bradford] and arrange a time for [Mr. Patterson] to call and talk to [Mr. Case]."  (Doc. 28-6, p. 9).

Ms. Bradford estimated that she scheduled roughly 20 appointments to meet with Mr. Case, but, with one exception, Ms. West called Ms. Bradford before each meeting to reschedule.  (Doc. 29, pp. 36-37).  Mr. Jackson covered the one meeting that Ms. West did not reschedule; Mr. Case did not attend.  (Doc. 29, p. 37).  Ms. Bradford drove to Mr. Case's office to see if she could speak with Mr. Case without an appointment.  (Doc. 29, pp. 34-35).  Ms. Bradford testified that she had spoken with Mr. Patterson, and he was concerned and wanted information about his case.  (Doc. 29, p. 35).  Ms. Bradford drove down on Saturdays to look for Mr. Case's car, and she went inside to ask to speak with him.  (Doc. 29, pp. 34-35).

Mr. Patterson's letters to Mr. Case confirm that Mr. Case was not accessible to Mr. Patterson or his mother.  On September 12, 2016, Mr. Patterson wrote:

> I sent you one letter Did not here [*sic*] back from you Cant [*sic*] seem to get you on the phone Can you send me a letter back Let me no [*sic*] what's going on about getting me out of here Tell me what you got going for me . . .

(Doc. 28-8, p. 1).  In a letter to Mr. Case dated May 29, 2017, Mr. Patterson wrote:

> I have called but can not [*sic*] get you on the phone. Tim about a 1 ½ [years] ago I give you 10,000 You where [*sic*] going to file something to the fedal [*sic*] court. You did not think it was a good [idea]. You said

16

in Dec. that you were triing [*sic*] something else at the 1ˢᵗ of the year
Now it's 6 months later Have still not heard from you . . . Need to here
[*sic*] from you today . . . I will give you a few days to get me back
something in the mail.  I need to no [*sic*] what why and how????

P.S.  If you can not [*sic*] help me let me no [*sic*]

(Doc. 28-8, p. 3) (emphasis omitted).  Thus, the combined efforts by Mr. Patterson

and Ms. Bradford to communicate with Mr. Case and pursue post-conviction relief

meet the diligence requirement for equitable tolling.

Mr. Patterson also has demonstrated that extraordinary circumstances beyond

his control caused him to miss the one-year deadline for filing his federal habeas

petition.   A prisoner may satisfy the extraordinary circumstances prong of the

*Holland* test by demonstrating serious attorney misconduct.  *Holland*, 560 U.S. at

649, 651.  To qualify for equitable tolling, a petitioner must show that his attorney's

conduct is tantamount to abandonment or other professional misconduct; mere

negligence is not sufficient.  *Maples v. Thomas*, 565 U.S. 266, 282-83 (2012); *see*

*Holland*, 560 U.S. at 651-52; *Irwin v. Department of Veterans Affairs*, 498 U.S. 89,

90 (1990) (when deciding whether attorney misconduct constitutes an extraordinary

circumstance, a court must distinguish between "garden variety claim[s]" involving

simple miscalculations or misunderstandings and egregious behavior); *Cadet v.*

*Florida Dep't of Corr.*, 853 F.3d 1216, 1227 (11th Cir. 2017) ("[E]ither

abandonment of the attorney-client relationship, . . . or some other professional

misconduct or some other extraordinary circumstance is required" to toll the one-

year limitation period for a § 2254 habeas petition.).  Courts must evaluate attorney misconduct "'on a case-by-case basis' in light of 'specific circumstances, . . . draw[ing] upon decisions made in other similar cases for guidance.'" *Hutchinson v. Florida*, 677 F.3d 1097, 1098 (11th Cir. 2012) (quoting *Holland*, 560 U.S. at 650).

The evidence concerning Mr. Case's egregious mishandling of Mr. Patterson's case post-conviction aligns with the allegations of misconduct that led the Eleventh Circuit Court of Appeals to decide in *Downs* that those allegations, if proven, created extraordinary circumstances that entitled the petitioner to equitable tolling.  In *Downs*, the petitioner's attorney told him that he had filed a state habeas petition on the petitioner's behalf, a state court filing that "would have tolled the federal habeas limitations period," but "the lawyer's representation was a lie:  no state petition had been filed." *Downs*, 520 F.3d at 1314.  The petitioner's attorney did not file the petition until just before the federal limitations period was about to expire.  *Downs*, 520 F.3d at 1315.  Despite the petitioner's written requests, his lawyer did not prepare a federal habeas petition for him, so the petitioner finally wrote one himself.  *Downs*, 520 F.3d at 1315.  Ultimately, the petitioner's lawyer filed a federal petition on his behalf just over one week after the one-year deadline for the petition expired.  *Downs*, 520 F.3d at 1316.  The Eleventh Circuit summed up the petitioner's situation this way:  "throughout the course of their representation,

counsel thwarted Downs' best efforts to file a timely petition, working against his interests at every turn." *Downs*, 520 F.3d at 1322.

The record here indicates that in his post-conviction representation of Mr. Patterson, Mr. Case was all about the money. This is not simply the Court's opinion; Mr. Case concedes that after he suggested that Mr. Patterson pursue federal habeas relief and Ms. Bradford paid him for additional post-conviction work, he did no more work on Mr. Patterson's case. (Doc. 29, pp. 51, 88-89, 117-18). Still, he represented to Mr. Patterson that he was working on his case. (Doc. 29, pp. 88-89). So did Ms. West on Mr. Case's behalf. (Doc. 28-6, p. 4). In a letter to Ms. Bradford and Mr. Patterson dated September 25, 2017, Mr. Patterson wrote:

> As you know, we have exhausted our State Court remedies regarding the appeal of his case. However, there is another avenue I am pursuing by and on behalf of Rodney. I explained this to Rodney at our last meeting while he was in prison. I am pursuing a Rule 32 Petition based on jurisdictional grounds and/or new evidence. If you will, please contact my office to come in and meet with my office staff or myself so we may discuss this matter further. I know this is a long and drawn out process. However, this is a very serious and complicated case that involves numerous issues. I trust that you understand and agree.

(Doc. 28-5, p. 5). When Mr. Case wrote this letter, the ordinary one-year deadline for Mr. Patterson to file a petition for relief under Rule 32 of the Alabama Rules of

Criminal Procedure already had expired, and Mr. Case was not actively pursuing new evidence.[8]  Thus, Mr. Case's letter was misleading.

Moreover, by encouraging Mr. Patterson and Ms. Bradford to hire him to pursue a post-conviction remedy for Mr. Patterson, Mr. Case foreclosed post-conviction arguments about ineffective assistance of trial counsel because Mr. Case was Mr. Patterson's trial attorney, and he would have a conflict of interest if he argued in a post-conviction petition that his trial work was so deficient that it warranted post-conviction relief.  (Doc. 29, pp. 91-92).  Mr. Case's self-serving act of persuading Mr. Patterson and Ms. Bradford to hire him to represent Mr. Patterson in post-conviction proceedings improperly limited Mr. Patterson's post-conviction grounds for relief.

And when Mr. Case urged Mr. Patterson and Ms. Bradford to have him pursue post-conviction relief on Mr. Patterson's behalf, he mentioned only a federal habeas petition; a Rule 32 petition based on new evidence was not a part of the discussion. (Doc. 28-5, pp. 1-2).  Mr. Case testified that eventually, he decided that a federal

---

[8] Mr. Case's "work" on Mr. Patterson's Rule 32 petition consisted of waiting to see if Mr. Theodorie, a witness who testified against Mr. Patterson, provided "new evidence" by recanting his testimony.  Mr. Case did not approach Mr. Theodorie because he was represented by an attorney. (Doc. 29, pp. 100-04).  Mr. Case's statement that he was "working" on Mr. Patterson's Rule 32 petition was, at best, a tremendous overstatement.

Under Rule 32.2 of the Alabama Rules of Criminal Procedure, a petitioner typically has one year to file a request for relief under Rule 32. ALA. R. CRIM. P. 32.2(c).  Rule 32.2 states that a petitioner may bring a petition for relief under Rule 32 "within six (6) months after the discovery of newly discovered material facts . . . ." ALA. R. CRIM. P. 32.2(c).

habeas petition was not a good idea – likely because he had not preserved in state court federal constitutional challenges to Mr. Patterson's conviction and sentence – but Mr. Case did not share his change in strategy with Mr. Patterson until a meeting in December 2016, months after the time to file a federal habeas petition had expired. (Doc. 28-5, p. 4; Doc. 29, pp. 89-90).

Mr. Case abandoned Mr. Patterson because Mr. Case egregiously ignored phone calls and letters from Mr. Patterson and phone calls from and meetings with Mr. Patterson's mother, Ms. Bradford.  Mr. Case withheld from Mr. Patterson important information about the status of his case and misrepresented to Mr. Patterson the extent of his post-conviction efforts on his behalf.  In proposing to represent Mr. Patterson in post-conviction proceedings, Mr. Case elevated his financial interests above Mr. Patterson's legal interests and failed to disclose to Mr. Patterson that he would lose an ineffective assistance challenge to his conviction and sentence, based on Mr. Case's trial work, if Mr. Case represented him in post-conviction proceedings.  Viewing Mr. Case's "behavior as a whole," Mr. Case's conduct was extraordinarily deficient; he was not merely negligent.  *Downs*, 520 F.3d at 1323.

And the delay that Mr. Case's extraordinary conduct created was beyond Mr. Patterson's control.  Mr. Patterson diligently pursued Mr. Case, and, on the rare occasions that Mr. Patterson was able to reach Mr. Case, Mr. Case assured Mr.

Patterson that the "drawn out [Rule 32] process" was ongoing.  The "extraordinary circumstances which impeded [Mr. Patterson's] timely filing were ones he was reasonably unable to control." *Downs*, 520 F.3d at 1324.  By the time Mr. Case's misconduct came to light, it was too late; Mr. Patterson's deadline to file a habeas petition already had expired.

On the evidence in this record, the one-year statute of limitations for Mr. Patterson to file his habeas petition was equitably tolled between April 2015 and June 1, 2018, the day Mr. Patterson confronted Mr. Jackson about Mr. Case's failure to pursue post-conviction relief.[9]  Therefore, Mr. Patterson's December 2018 habeas petition was timely.

## CONCLUSION

For the reasons stated, the Court sustains Mr. Patterson's objection to the magistrate judge's report, tolls the one-year period for filing a habeas petition, and finds that Mr. Patterson's habeas petition is timely.  Warden Estes shall file a

---

[9] As noted, Ms. Bradford confronted Ms. West in the fall of 2017 after Ms. Bradford read on the internet that Mr. Case had taken clients' money and not performed work for them.  Shortly after Ms. Bradford's conversation with Ms. West, Mr. Case wrote Mr. Patterson and Ms. Bradford, stating that he was working on a Rule 32 petition.  Mr. Case asked Ms. Bradford to come to his office to discuss the matter further.  (Doc. 28-5, p. 5).  Though it may not have been wise for Mr. Patterson and Ms. Bradford to rely on Mr. Case's letter, the Court cannot say that their reliance was unreasonable.  Ms. Bradford had no independent verification that the information she found on the internet was true; Mr. Case had an ethical obligation to be truthful to his client, and Mr. Patterson did not have information that disclosed that Mr. Case had not been truthful; and Ms. Bradford already had sold her house to pay for Mr. Patterson's defense at trial and used a credit card to pay Mr. Case's fee for his post-conviction "work."  Mr. Patterson and Ms. Bradford were in an untenable position and, absent provable misconduct, had to rely on Mr. Case.

response to Mr. Patterson's petition on or before July 11, 2022.  Mr. Patterson may file a reply on or before July 25, 2022.

**DONE** and **ORDERED** this June 27, 2022.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE