FILED

2026 Mar-24  PM 03:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

|  |  |  |
|---|---|---|
| RODNEY WAYNE PATTERSON, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Case No.: 5:18-cv-02059-MHH |
| WARDEN DEWAYNE ESTES, | ) ) ) | |
| Respondent. | | |

**MEMORANDUM OPINION**

Pursuant to 28 U.S.C. § 2254, petitioner Rodney Wayne Patterson seeks federal habeas relief from his state court conviction for attempted murder. (Doc. 1). The Court previously determined that Mr. Patterson's habeas petition is untimely but that he is entitled to equitable tolling because he has demonstrated that his attorney abandoned him, creating extraordinary circumstances beyond Mr. Patterson's control that caused him to miss the one-year deadline for his federal habeas petition. (Doc. 49).[1]

---

[1] Mr. Patterson filed his habeas petition without the help of an attorney. Before proceeding with an evidentiary hearing on the equitable tolling issue, the Court appointed the Federal Public Defender to represent Mr. Patterson in this matter. (Doc. 18).

Warden Estes has responded to Mr. Patterson's petition.  Warden Estes argues that Mr. Patterson's federal habeas claims are unexhausted and procedurally defaulted.  (Doc. 50).  In reply, Mr. Patterson argues that the finding that his attorney abandoned him establishes cause to excuse procedural default on his federal habeas claims.  (Doc. 53, pp. 5-6).  Mr. Patterson asserts that the abandonment prejudiced him because he "presented a meritorious claim" based on a Sixth Amendment speedy trial violation.  (Doc. 53, p. 3) (citing Doc. 1, p. 11)).  Mr. Patterson argues that his Sixth Amendment speedy trial challenge to his conviction "also fairly asserts the related claim that [his] trial counsel rendered ineffective assistance by failing to assert the right to a speedy trial for almost four years after Mr. Patterson's initial arrest."  (Doc. 53, p. 3).  Mr. Patterson has asked the Court to hold an evidentiary hearing "on the cognizable grounds for relief presented in the § 2254 petition."  (Doc. 53, p. 6).

This opinion addresses Warden Estes's contention that Mr. Patterson's speedy trial claim and ineffective assistance of trial counsel claim are unexhausted and procedurally defaulted.  The Court first describes the state and federal proceedings relevant to Mr. Patterson's petition.  Then, the Court discusses the law that governs exhaustion and procedural default, and the Court applies that law to determine

whether the Court should dismiss Mr. Patterson's habeas petition for failure to exhaust and procedural default.

## I.

On September 28, 2009, Evon Patterson, Mr. Patterson's father's widow was shot in the forehead in her home. (Doc. 4-3, pp. 1-2). Mr. Patterson was arrested on September 29, 2009 and indicted on January 15, 2010 in Lawrence County, Alabama for the attempted murder of Evon Patterson. (Doc. 25-1, p. 2). On February 18, 2010, Mr. Patterson pleaded not guilty, waived his right to an arraignment, and was released on bond. (Doc. 25-3, pp. 1, 5).

The trial court appointed attorney John David Kimbrough to represent Mr. Patterson and set the case for trial on March 22, 2010. (Doc. 25-3, pp. 1, 3, 5). Mr. Kimbrough filed a request for disclosure of evidence and petitioned for a psychiatric evaluation of Mr. Patterson. (Doc. 25-3, pp. 6-9). In March 2010, the trial court ordered an evaluation of Mr. Patterson's competency to stand trial and his mental state at the time of the offense; Dr. Doug McKeown evaluated Mr. Patterson on April 14, 2010. (Doc. 25-3, pp. 10-13; Doc. 25-4, pp. 1-5). Dr. McKeown concluded that Mr. Patterson was competent to stand trial and did not have a "severe mental disease or defect" that would "allow a basis for mental state defense." (Doc. 25-4, p. 5).

3

While on bond, in May 2010, Mr. Patterson was charged with reckless endangerment for allegedly trying to run Evon Patterson off the road, and the trial court revoked his pretrial bond in his attempted murder case. (Doc. 25-4, pp. 6-11). In June 2010, Mr. Patterson hired attorney Chris Malcom to represent him in his attempted murder case, and Mr. Malcom filed a motion to reinstate Mr. Patterson's bond. (Doc. 25-5, pp. 1-3). On July 26, 2010, Lawrence County Circuit Judge Craig denied the motion to reinstate Mr. Patterson's bond and then recused from the case because Judge Craig and Mr. Malcolm were running against one another for Judge Craig's seat on the bench. (Doc. 25-5, pp. 14-15).[2] Per Alabama's rules of judicial administration, Judge Craig assigned Lawrence County District Judge Terry as a special circuit court judge to handle Mr. Patterson's case. (Doc. 25-5, pp. 13, 15). Judge Terry recused from the case because she had presided over Mr. Patterson's misdemeanor reckless endangerment case. (Doc. 25-5, pp. 18-19). On September 1, 2010, the Chief Justice of the Alabama Supreme Court assigned the case to Colbert County Circuit Judge Tompkins. (Doc. 25-6, pp. 1-2, 6, 11).

On September 22, 2010, Mr. Malcolm filed another motion to reinstate Mr. Patterson's bond; Judge Tompkins denied the motion on November 15, 2010. (Doc. 25-6, pp. 7-10, 12). Mr. Malcolm appealed to the Alabama Court of Criminal

---

[2] Despite Judge Craig's recusal, on August 10, 2010, Judge Craig granted Mr. Kimbrough's motion to withdraw as Mr. Patterson's attorney. (Doc. 25-5, p. 17).

Appeals and argued that Mr. Patterson's bond should be reinstated because Mr. Patterson had been acquitted on the misdemeanor reckless endangerment charge that "formed the basis for the revocation of his pretrial bail." (Doc. 25-6, pp. 17-18). On March 18, 2011, the ACCA reinstated Mr. Patterson's pretrial bond. (Doc. 25-6, pp. 17-25, Doc. 25-7, pp. 1-8). Judge Tompkins released Mr. Patterson from custody on April 4, 2011, and on April 5, 2011, at the request of the State, Judge Tompkins amended the conditions of Mr. Patterson's release to include GPS monitoring. (Doc. 25-7, pp. 10-13).[3] That same day, Mr. Malcom objected to Judge Tompkins's amendment of Mr. Patterson's conditions of release and asked for removal of the GPS monitoring. (Doc. 25-7, pp. 14-16). Judge Tompkins denied Mr. Malcom's request on April 6, 2011. (Doc. 25-7, p. 17). Mr. Malcom petitioned the ACCA for a writ of habeas corpus or a writ of mandamus directing Judge Tompkins to set aside his order imposing GPS monitoring as a condition of Mr. Patterson's release. (Doc. 25-7, p. 19). The ACCA denied the petition on August 19, 2011. (Doc. 25-7, pp. 19-20).

On May 8, 2012, the Lawrence County Community Corrections requested a bench warrant after Mr. Patterson tested positive for cocaine. (Doc. 25-7, p. 21). On May 9, 2012, Judge Craig ordered Mr. Patterson to report to jail on May 14, 2012

---

[3] Mr. Patterson was in pretrial custody from May 2010 through April 4, 2011 because of his bond revocation.

to serve 30 days in custody.  (Doc. 25-7, p. 22).  Mr. Patterson was released from jail on June 12, 2012.  (Doc. 25-7, pp. 23-24).

On October 5, 2012 and May 13, 2013, the State filed motions to set Mr. Patterson's case for trial.  (Doc. 25-7, pp. 25-26).  On May 22, 2013, Judge Tompkins set the case for trial on August 12, 2013. (Doc. 25-7, p. 27).  On August 10, 2013, the day before he entered his notice of appearance as co-counsel with Mr. Malcom, attorney Tim Case filed a motion to dismiss for lack of speedy trial and/or lack of prosecution.  (Doc. 25-7, pp 28-31; *see* Doc. 25-8, p. 22).  On August 11, 2013, Mr. Case filed a motion for discovery, several motions in limine, and a motion to compel the State to produce the written statement of Evon Patterson before opening statements in Mr. Patterson's trial.  (Doc. 25-7, pp. 34-45; Doc. 25-8, p. 1).

Mr. Case and the State argued these motions on the first day of trial, August 12, 2013.  (Doc. 25-11, p. 37; Doc. 25-12, pp. 1-15).  The argument concerning Mr. Patterson's speedy trial motion was as follows:

> [Mr. Case]:  Mr. Malcom and I have talked since I've been involved in this case Thursday about this motion to dismiss for lack of speedy trial. The case that this Court well knows far better than I will ever know once you get over a twelve month delay it's presumptive prejudice and it starts with the Barker vs. Wingo case from 1972, the United States Supreme Court that sets out the four different factors.
>
> We are well over the twelve month period so the burden shifts to the State to show why there is a delay, could be intentional delay, negligent delay or what--there are three other factors in which to examine.  Now

6

that we've shown that it was over twelve months since the incident, he was indicted quickly--arrested the next day, and indicted quickly thereafter. We're well over twelve months since that time so I would move to shift the burden to the State to show why it's been delayed so long.

 [Prosecutor]  If I may respond, Your Honor?  This case is kind of an unusual posture in that Mr. Case is the third attorney involved in the case.  Initially Mr. Malcom was retained and I think at that time it was during the election where he was running against the sitting circuit judge and so the sitting judge was required to recuse in Mr. Malcom's cases. That was the only conflict was the election.

And after an initial period where the Court is aware of the proceeding that dealt with the revocation of release and the incarceration, the defendant has been out after serving or being in jail eleven months based on the revocation.  Since that time, he's been out and free and at no time during the pendency of this case has the defendant requested a speedy trial.  In fact, the State had filed two motions to set the case.

It's the State's position that the defendant didn't want this case set for trial because he was out.  And once this case comes to trial there is a substantial likelihood that he will no longer be a free man, and he didn't want the trial to be brought before it is now.  I produce State's Exhibits 1 and 2 which are copies of the two motions that the State had filed.  One in May of this year and one prior to that in October of last year where we would ask for the case to come to court.

So the State has in no way acted unreasonable or caused the delay in this case.  It's just kind of a situation when you deal with recusals of having--in a small circuit like this having available courtroom and jurors and time to get the case to the trial.  It's not anything that the State's done.  We've not denied him a speedy [trial,] and I don't think he wanted a speedy trial.

. . .

7

[Mr. Case]: Mr. Lang and I say this respectively [sic] toward Mr. Lang, in this case, Your Honor, there was recusals, but this defendant was charged and held in jail in the Lawrence County Jail for eleven months on a charge that he was acquitted on through the good efforts of Mr. Malcom at trial. He spent eleven months on a bond revocation on a case that he was acquitted on at trial and then he was put on an ankle bracelet for approximately thirty-one months.

That ankle bracelet cost him around fifteen thousand dollars at around three, almost four hundred dollars a month and he has been prejudiced because if this case were to have gone to trial and in this case as you will see, Your Honor, this case hopefully you'll dismiss it, but if it were to have gone to trial at some point in the last four years, he could have been convicted of a lesser included offense of anywhere from reckless endangerment to assault third, assault second or assault first and he could have EOSed or finished his sentence so, therefore, he has shown prejudice because he's already built about four years of incarceration. Eleven months at the Lawrence County Jail and about thirty-one months I believe through the ankle bracelet.

He was arrested September 29th, 2009, he was indicted, Your Honor, January 15th, 2010. His bond was revoked on May 13th, 2010 and he was released on a GPS monitoring sometime there later and Judge Craig recused on July 26th, 2010. The State filed a motion to set the trial for the first time October 5th, 2010. And then filed the motion again May 13th, 2013 and then an order was entered on May 22nd, 2013.

It's not that they intentionally sat on it, it's just that it's prejudiced him and if he can show he's got presumptive prejudice, but he is now showing actual prejudice because if he would have come back at any time in the last four years with a lesser included, he could have very well have EOSed or killed his sentence and served off his time under those lesser included offenses.

(Doc. 25-11, p. 37; Doc. 25-12, pp. 1-5) (brackets added). Judge Tompkins denied

the motion to dismiss based on a speedy trial violation. (Doc. 25-12, p. 6).

8

A jury in the Circuit Court of Lawrence County, Alabama found Mr. Patterson guilty of attempted murder. (Doc. 12-8; Doc. 25-25, p. 40). On October 10, 2013, the trial court sentenced Mr. Patterson to life in prison. (Doc. 12-7; Doc. 25-25, pp. 45-49; Doc. 25-26, pp. 1-5). In November 2013, Mr. Case filed a motion for a new trial based on "all of the prejudicial reversible error committed at the trial of this case and the failure to give certain requested jury instructions." (Doc. 25-9, p. 2).[4] Mr. Case also filed a motion to stay execution of Mr. Patterson's sentence until disposition of appeal and a motion to allow additional time served toward his sentence. (Doc. 25-9, pp. 4-7).[5]

Mr. Case appealed Mr. Patterson's conviction and sentence to the ACCA in March 2014. (Doc. 4-1, pp. 1-23; Doc. 25-1; Doc. 25-9, pp. 8-12). Mr. Case raised as issues on direct appeal: (1) whether the trial court committed reversible error by not granting the motion to dismiss for lack of a speedy trial; (2) whether the trial court committed reversible error by not giving the requested jury instruction of assault, 3rd degree, pursuant to § 13A-6-22(a)(1)-(3); and (3) whether the trial court committed reversible error by not giving Patterson credit for the time he served in

---

[4] In his motion for new trial, Mr. Case did not explain or discuss the alleged prejudicial reversible errors or the substance of the requested jury instructions. (Doc. 25-9, p. 2).

[5] The Court cannot locate in the record the state court's denial of Mr. Case's motion for a new trial, motion for a stay, or motion to allow time served toward his sentence.

9

incarceration and while on an ankle monitoring and/or GPS monitoring device. (Doc. 4-1, p. 7).   Mr. Malcom withdrew from Mr. Patterson's case; Mr. Case represented Mr. Patterson on appeal.  (Doc. 25-9, pp. 14-15).[6]

In March 2015, the ACCA affirmed Mr. Patterson's conviction and sentence. (Doc. 4-3).   In April 2015, the ACCA overruled Mr. Patterson's application for rehearing.  (Doc. 12, p. 3) (citing *Alabama v. Patterson*, 42-CC-2010-000084.00, doc. 159).   On May 15, 2015, the Alabama Supreme Court denied Mr. Patterson's petition for a writ of certiorari.  (Doc. 4-4).

As discussed in the Court's June 28, 2022 order, Mr. Patterson's deadline for filing a Rule 32 habeas petition in state court began running on August 14, 2025 and expired one year after that on August 14, 2016.  (Doc. 49, p. 2).  On September 17, 2018, Mr. Patterson filed a *pro se* Rule 32 petition in the Circuit Court of Lawrence County.  (Doc. 12-2).   On the Rule 32 form petition, Mr. Patterson marked the following as "Grounds of Petition":

> (4) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
> . . .

---

[6] On September 17, 2014, the ACCA remanded Mr. Patterson's case to the Lawrence County Circuit Court with instructions to determine and certify the actual time Mr. Patterson spent incarcerated pending trial and to credit his sentence for all time previously served.  (Doc. 12, p. 3). After the circuit court credited the time served, the case returned to the ACCA.  (Doc. 12, p. 3).

(6) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

. . .

(8) Conviction obtained by action of a grand jury which was unconstitutionally selected or impaneled.

. . .

(E) Newly discovered material facts exist which require that the conviction or sentence be vacated [ ].

(Doc. 12-2, pp. 6-7).  Mr. Patterson did not mark the ground "(9) Denial of effective assistance of counsel." (Doc. 12-2, p. 7).  Mr. Patterson attached to the Rule 32 form handwritten arguments to support his petition.  (Doc. 12-2, pp. 12-28).  In his arguments, Mr. Patterson mentions the unfairness of his trial "based on the delay of four years." (Doc. 12-2, p. 14).

On January 17, 2019, the Circuit Court dismissed Mr. Patterson's petition, finding, among other things, that the petition was time barred.  (Doc. 11, pp. 2-3). Mr. Patterson appealed to the ACCA.  (Doc. 12-1).  On October 9, 2019, the ACCA dismissed his appeal "for Failure to File Brief." (Doc. 34-1, p. 1).  In its dismissal order, the ACCA explained that it was dismissing Mr. Patterson's appeal "for failure by the appellant to file a brief after notice of this deficiency." (Doc. 34-1, p. 2).

On December 13, 2018, while his Rule 32 petition was pending in state court, Mr. Patterson filed in this federal court a *pro se* petition for habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  The Court appointed an attorney to represent Mr.

11

Patterson in this action, held an evidentiary hearing on the timeliness of his § 2254 petition, and found that equitable tolling saved Mr. Patterson's § 2254 petition from the one-year period of limitation in 28 U.S.C. § 2244(d)(1).  (Docs. 16, 18, 21, 29, 49).[7]  Warden Estes has responded to Mr. Patterson's petition, and Mr. Patterson, through counsel, has replied.  (Docs. 50, 53).

## II.

Warden Estes argues that Mr. Patterson's § 2254 claims are unexhausted and procedurally defaulted because Mr. Patterson did not raise the claims in state court. (Doc. 50, pp. 7-14).  Regarding exhaustion and procedural default, the United States Supreme Court has explained:

> [B]oth Congress and federal habeas courts have set out strict rules requiring prisoners to raise all of their federal claims in state court before seeking federal relief.  First, AEDPA requires state prisoners to "exhaus[t] the remedies available in the courts of the State" before seeking federal habeas relief.  28 U.S.C. § 2254(b)(1)(A).  Ordinarily, a state prisoner satisfies this exhaustion requirement by raising his federal claim before the state courts in accordance with state procedures.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 [] (1999).

*Shinn v. Ramirez*, 596 U.S. 366, 378 (2022) (brackets added).  Exhaustion requires that § 2254 petitioners give the states "one full opportunity to resolve any

---

[7] Before the hearing, Warden Estes's attorney supplemented the record with Mr. Patterson's state court records for his direct appeal and his Rule 32 petition, (Docs. 25-1 to Doc. 25-28), the ACCA's order finding Mr. Patterson's Rule 32 appeal brief delinquent, (Doc. 25-29), the ACCA's order dismissing Mr. Patterson's Rule 32 petition, (Doc. 25-30), and the Certificate of Judgment from the ACCA, (Doc. 25-31).

constitutional issues by involving one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. In Alabama, a complete round of the established appellate review procedure includes an appeal to the Alabama Court of Criminal appeals, an application for rehearing to that court, and a petition for writ of certiorari to the Alabama Supreme Court. *Dill v. Holt*, 371 F.3d 1301, 1303 (11th Cir. 2004). If a petitioner has exhausted his claim with one complete round of appellate procedure,

> a federal habeas court may hear his claim, but its review is highly circumscribed. In particular, the federal court may review the claim based solely on the state-court record, *see Cullen v. Pinholster*, 563 U.S. 170, 180 [] (2011), and the prisoner must demonstrate that, under this Court's precedents, no "fairminded juris[t]" could have reached the same judgment as the state court, *Harrington [v. Richter]*, 562 U.S. [86,] 102 [2011]; *see* § 2254(d).

*Shinn*, 596 U.S. at 378 (brackets added). In *Shinn*, the Supreme Court also explained:

> State prisoners, however, often fail to raise their federal claims in compliance with state procedures, or even raise those claims in state court at all. If a state court would dismiss these claims for their procedural failures, such claims are technically exhausted because, in the habeas context, "state-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability." *Woodford v. Ngo*, 548 U.S. 81, 92–93 [] (2006). But to allow a state prisoner simply to ignore state procedure on the way to federal court would defeat the evident goal of the exhaustion rule. *See Coleman [v. Thompson,* 501 U.S. 722, 732 (1991)]. Thus, federal habeas courts must apply "an important 'corollary' to the exhaustion requirement": the doctrine of procedural default. *Davila [v. Davis*, 582

U.S. 521, 527 (2017)].  Under that doctrine, federal courts generally decline to hear any federal claim that was not presented to the state courts "consistent with [the State's] own procedural rules." *Edwards v. Carpenter*, 529 U.S. 446, 453 [] (2000).

Together, exhaustion and procedural default promote federal-state comity.  Exhaustion affords States "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights," *Duckworth v. Serrano*, 454 U.S. 1, 3 [] (1981) (*per curiam*), and procedural default protects against "the significant harm to the States that results from the failure of federal courts to respect" state procedural rules, *Coleman*, 501 U.S. at 750 [].

*Shinn*, 596 U.S. at 378–79 (brackets added).

When a claim is procedurally defaulted, "a federal court can forgive the default and adjudicate the claim if the prisoner provides an adequate excuse." *Shinn*, 596 U.S. at 379.  Federal district courts may excuse procedural default "if a prisoner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.'" *Shinn*, 596 U.S. at 379 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).[8]  To establish cause, the prisoner must "'show that some

---

[8]  A federal district court can also excuse procedural default if a petitioner "'demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice.'"  *Carruth v. Comm'r, Ala. Dep't of Corr.*, 93 F.4th 1338, 1355 (11th Cir. 2024) (quoting *Coleman*, 501 U.S. at 750).  A fundamental miscarriage of justice occurs "only when 'a constitutional violation has probably resulted in the conviction of . . . [an] innocent [person].'"  *Carruth*, 93 F.4th at 1355 (brackets in *Carruth*) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  "To determine if someone was actually innocent, [a] petitioner must demonstrate 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  *Carruth*, 93 F.4th at 1355 (quoting *Schlup*, 513 U.S. at 327) (brackets added).  Mr. Patterson did not raise a fundamental miscarriage of justice exception in his reply.  (*See* Doc. 53).  Even if he had, there was sufficient evidence presented at trial from which a jury reasonably could convict Mr. Patterson

objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'"  *Shinn*, 596 U.S. at 379 (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  To establish actual prejudice, the petitioner must show "that the constitutional violation worked to his *actual* and substantial disadvantage." *Shinn*, 596 U.S. at 379-80 (emphasis in *Shinn*) (internal quotations and citations omitted).

### III.

### *Speedy Trial Claim*

Mr. Patterson raised a speedy trial claim during trial and on direct appeal to the ACCA.  (Doc. 4-1, p. 7; Doc. 25-11, p. 37; Doc. 25-12, pp. 1-5).  The ACCA adjudicated Mr. Patterson's speedy trial claim on the merits in a reasoned opinion. (Doc. 4-3).  Mr. Patterson applied for rehearing with the ACCA and petitioned the Alabama Supreme Court for a writ of certiorari.  (Doc. 12, p. 3; Doc. 4-4).  Because Mr. Patterson "invok[ed] one complete round of the State's established appellate review process,"  Mr. Patterson has exhausted his speedy trial claim, and that claim is not procedurally defaulted.  *O'Sullivan*, 526 U.S. at 842; *Dill v. Holt*, 371 F.3d 1301, 1303 (11th Cir. 2004).

---

of attempted murder, including the testimony of the victim Evon Patterson and Ms. Hill, who placed Mr. Patterson at the scene of the shooting.

Because the ACCA decided Mr. Patterson's speedy trial claim on the merits, the Court must consider the merits of Mr. Patterson's speedy trial claim under the "highly deferential standard for evaluating state-court rulings" per the Antiterrorism and Effective Death Penalty Act of 1996. *Davis v. Comm'r, Ala. Dep't of Corr.*, 120 F.4th 768, 788 (11th Cir. 2024). The AEDPA "precludes federal courts from granting habeas relief on a claim already adjudicated on the merits in state court unless the state court's decision (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Ferguson v. Sec'y Fla. Dep't of Corr.,* 716 F.3d 1315, 1331 (11th Cir. 2013) (quoting 28 U.S.C. § 2254(d)). These standards are "difficult to meet." *Sears v. Warden GDCP*, 73 F.4th 1269, 1280 (11th Cir. 2023).

A state court decision is "contrary to" clearly established federal law if it applies a rule that "contradicts the governing law set forth by the United States Supreme Court" or arrives at a result that differs from Supreme Court precedent "when faced with materially indistinguishable facts." *Davis*, 120 F.4th at 788 (internal quotations and citations omitted). A state court decision involves an "unreasonable application" of clearly established federal law "'if the state court

16

correctly identifies the governing legal principle'" from the relevant Supreme Court decisions "'but unreasonably applies it to the facts of the particular case.'"   *Davis*, 120 F.4th at 788 (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

Regarding the unreasonable application standard, the Eleventh Circuit has explained:

> "[A] prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Shinn v. Kayer*, 592 U.S. 111, 118 [] (2020) (quotations omitted); *Renico v. Lett*, 559 U.S. 766, 773 [] (2010) ("Indeed, 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" (quoting *Terry Williams*, 529 U.S. at 411[]). Rather, the state court's application of federal law "must be objectively unreasonable," *Renico*, 559 U.S. at 773 [] (quotations omitted), meaning that "the state court's decision is so obviously wrong that its error lies beyond any possibility for fairminded disagreement," *Shinn*, 592 U.S. at 118 [] (quotations omitted).
>
> "[W]hen the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion . . . a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. 122, 126 [] (2018).  However, [a district court is] not limited by the particular justifications the state court provided for its decision[] and may consider additional rationales that support the state court's determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1036 (11th Cir. 2022) (*en banc*).
>
> Importantly, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 [] (2011).  Rather, a petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

17

possibility for fairminded disagreement." *Id.* at 103[].  In other words, where AEDPA deference applies, [a district court is] precluded from granting federal habeas relief "so long as fairminded jurists could disagree on the correctness of the state court's decision." *Pye*, 50 F.4th at 1034 (*en banc*) (quoting *Harrington*, 562 U.S. at 101[]).

*Davis*, 120 F.4th at 788-89.  Likewise, "a state-court factual determination is not unreasonable [for purposes of § 2254(d)(2)] merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the [state] trial court's . . . determination.'"  *Wood*, 558 U.S. at 290 (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)).

Under AEDPA, a district court's "initial review of whether a state-court decision was reasonable is limited to the record at the time of the state court's decision. *Sears*, 73 F.4th at 1295.  If a petitioner can show that a state court's decision was an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts based on the state court record, a district court is "no longer bound by § 2254(d) or limited to consideration of the facts developed in the state court record" and can evaluate the habeas claim *de novo*. *Sears*, 73 F.4th at 1295.

18

In this case, on direct appeal, the ACCA ruled on the merits of Mr. Patterson's speedy trial claim in a reasoned opinion.  (Doc. 4-3, pp. 2-6).  Applying *Barker v. Wingo*, 407 U.S. 514 (1972), the ACCA stated:

Patterson was arrested on September 29, 2009, and indicted on January 15, 2010; Patterson was brought to trial on August 12, 2013.

. . .

In its brief, the State acknowledges that the delay--3 years and 10 and 1/2 months--in this case would be "presumptively prejudicial," (State's brief, p. 6), but that the circuit court properly dismissed Patterson's motion to dismiss under Barker.  We agree with the State.

In Ex parte Walker, 928 So. 2d 259, 265 (Ala. 2005), the Alabama Supreme Court held:

"The State has the burden of justifying the delay. See Barker [v. Wingo], 407 U.S. [514] at 531, 92 S. Ct. 2182 [(1972)]; Steeley v. City of Gadsden, 533 So. 2d 671, 680 (Ala. Crim. App. 1988). Barker recognizes three categories of reasons for delay:  (1) deliberate delay, (2) negligent delay, and (3) justified de1ay.  407 U.S. at 531, 92 S. Ct. 2182.  Courts assign different weight to different reasons for delay. Deliberate delay is 'weighted heavily' against the State. 407 U.S. at 531, 92 S. Ct. 2182. Deliberate delay includes an 'attempt to delay the trial in order to hamper the defense' or '"to gain some tactical advantage over (defendants) or to harass them."'  407 U.S. at 531 &  n. 32, 92 S. Ct. 2182 (quoting United States v. Marion, 404 U.S. 307, 325, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971)).

Negligent delay is weighted less heavily against the State than is deliberate delay. Barker, 407 U.S. at 531, 92 S. Ct. 2182; Ex parte Carrell, 565 So. 2d at 108. Justified delay--which includes such occurrences as missing witnesses or

delay for which the defendant is primarily responsible--is not weighted against the State.  <u>Barker</u>, 407 U.S. at 531, 92 S. Ct. 2182; <u>Zumbado v. State</u>, 615 So. 2d 1223, 1234 (Ala. Crim. App. 1993) ("'Delays occasioned by the defendant or on his behalf are excluded from the length of delay and are heavily counted against the defendant in applying the balancing test of Barker.'") (quoting <u>Mccallum v. State</u>, 407 So.2d 865, 868 (Ala. Crim. App. 1981))[.]"

<u>Ex parte Walker</u>, 928 So. 2d at 265.

In the present case, the record shows that on May 13, 2010, the circuit court entered an order revoking Patterson's bond after he was arrested on a separate charge of reckless endangerment involving the same victim.  On June 10, 2010, Patterson filed a request for reinstatement of bond.  Patterson's retained counsel thereafter became a candidate for the office of circuit judge and moved to recuse the circuit judge.  The circuit court judge recused himself, and, on March 2, 2010, a district judge was appointed to preside over and take under advisement Patterson's case.  On August 20, 2010, the district judge recused herself from Patterson's case because she had presided over the misdemeanor case involving Patterson.  After his case was transferred to a new judge, Patterson filed several pleadings and had another hearing involving his reckless-endangerment case.  On October 5, 2012, and May 13, 2013, the State moved to have the present case set for trial.

Given the above, there is no indication that the State intentionally or even negligently delayed Patterson's case. <u>See Zumbado</u>, 615 So. 2d at 1234.  Indeed, the majority of the delay was attributable to Patterson's other reckless-endangerment case involving the same victim, as well as certain recusals. Additionally, Patterson did not assert his right to a speedy trial until two days before trial.  "The fact that the appellant did not assert his right to a speedy trial sooner 'tends to suggest that he either acquiesced in the delays or suffered only minimal prejudice prior to that date.'" <u>Benefield v. State</u>, 726 So. 2d 286, 291 (Ala. Crim. App.

20

1997); See also Brown v. State, 392 So. 2d 1248, 1254 (Ala. Crim. App. 1980) (no speedy-trial violation where defendant asserted his right to a speedy trial three days before trial). The delays caused, in part, by Patterson's reckless-endangerment case along with his two-day notice reduces the significance of Patterson's assertion. Benefield, supra.

Finally, Patterson has not shown that he was prejudiced by the delay.

> "Barker set out three interests that the right to speedy trial was intended to protect and by which the level of prejudice is to be measured: (1) 'to prevent oppressive pretrial incarceration'; (2) 'to minimize anxiety and concern of the accused'; and (3) 'to limit the possibility that the defense will be impaired,' Barker, 407 U.S. at 532, 92 S. Ct. at 2193."

Zumbado v. State, 615 So. 2d 1223, 1234 (Ala. Crim. App. 1993). Although Patterson claims that he "clearly showed that he could have been convicted of a lesser-included offense and have been provided an early expiration of sentence and/or have served his sentence, in its entirety, by the time of conviction," Patterson was not convicted of a lesser-included offense; thus, he would not have necessarily served out his term of sentence. Furthermore, Peterson [sic] admitted at the hearing that "It's not that [the State] intentionally sat on it, it's just that [Patterson] can show he's got presumptive prejudice." (R. 11-12.) Even so, the State has justified the delay by showing that the majority of the delay was attributable to Patterson; that Patterson filed his motion for a speedy trial two days before trial; and that Patterson failed to show how he was prejudiced by the delay. Accordingly, the circuit court did not err by denying Patterson's motion to dismiss.

(Doc. 4-3, pp. 2-6).

Given the state court record and the ACCA's decision on the merits of Mr.

Patterson's speedy trial claim, the ACCA's factual findings and application of

*Barker* are reasonable. Under *Barker*, a court must weigh four factors in deciding

21

whether a post-indictment delay violates the Sixth Amendment right to a speedy trial: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) actual prejudice to the defendant." *United States v. Stapleton*, 39 F.4th 1320, 1327 (11th Cir. 2022) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). The ACCA weighed the *Barker* factors. The State admitted, and the ACCA found, that the almost four year delay was presumptively prejudicial. (Doc. 4-3, p. 4). The ACCA reasonably found that the reason for the delay factor did not weigh heavily against the State. As the ACCA noted, Mr. Patterson acknowledged at the hearing on the speedy trial motion that the State did not intentionally cause the delay. (Doc. 4-3, p. 6). The ACCA reasonably found that the State did not negligently cause the delays because the delays stemmed mostly from Mr. Patterson's reckless endangerment charge and recusals of judges that were out of the State's control and because the State filed motions to bring Mr. Patterson to trial in October 2012 and May 2013.  (Doc. 4-3, p. 5).

Moreover, the ACCA reasonably found that because Mr. Patterson did not assert his speedy trial right until two days before his trial, he either acquiesced in the delays or suffered minimal prejudice before that time. (Doc. 4-3, p. 6). As the State pointed out at the hearing on the speedy trial motion, Mr. Patterson likely did not want a speedy trial because he was on bond and not in custody during most of the

22

delay. (Doc. 4-3, p. 4).[9] The ACCA also reasonably found that Mr. Patterson did not show actual prejudice because of the delay. The ACCA found meritless Mr. Patterson's argument that had he been brought to trial sooner, and had he been convicted of a lesser included offense, he could have served his sentence by the time his case actually went to trial. The ACCA reasonably found that because a jury did not convict Mr. Patterson of a lesser included offense, "he would not have necessarily served out his term of sentence" had he been brought to trial earlier. (Doc. 4-3, p. 6). Mr. Patterson has not argued other ways in which he was prejudiced by the delay in bringing him to trial, (*See* Doc. 4-1, p. 16), and the Court has not found evidence of actual prejudice in the state court record.

Based on the record before the ACCA, the ACCA's weighing of the *Barker* factors was not "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn*, 592 U.S. at 118. Therefore, Mr. Patterson is not entitled to habeas petition based on his speedy trial argument.[10]

---

[9] Mr. Patterson was on bond from February 18, 2010 through May 2010. Mr. Patterson was in custody on a bond revocation from May 2010 through April 4, 2011, when the ACCA reinstated Mr. Patterson's bond. Mr. Patterson was on bond from April 4, 2011 through May 14, 2012, when he had to serve 30 days in jail for a positive drug test. He was on bond again from June 12, 2012 until his guilty verdict in mid-August 2013.

[10] Because the state court record does not indicate that the ACCA unreasonably applied *Barker*, Mr. Patterson is not entitled to an evidentiary hearing on this issue. Mr. Case's abandonment of Mr. Patterson on collateral review did not affect Mr. Patterson's factual development of the speedy trial issue in the state trial court or on direct appeal.

23

### *Ineffective Assistance of Trial Counsel*

From its review of the state court record, the Court has not found a state court filing in which Mr. Patterson raised at trial, on direct appeal, or in his untimely *pro se* Rule 32 petition an ineffective assistance of trial counsel claim based on failure to raise a speedy trial issue earlier. Mr. Patterson did not give the state court an opportunity to decide whether his trial counsel provided constitutionally inadequate assistance in violation of the Sixth Amendment. Therefore, his ineffective assistance of trial counsel claim is procedurally defaulted unless Mr. Patterson can show cause and actual prejudice to overcome the procedural default.

Mr. Patterson asserts that the Court's finding that Mr. Case abandoned him on collateral review provides cause to overcome procedural default. (Doc. 53, p. 5).[11]

---

[11] Mr. Case filed a motion to dismiss based on a speedy trial violation the day before he entered his notice of appearance. Therefore, Mr. Patterson's ineffective assistance of trial counsel claim cannot apply to Mr. Case's failure to raise the speedy trial issue earlier. In addition, as the Court stated in an earlier opinion, Mr. Case's representation of Mr. Patterson on collateral review foreclosed post-conviction arguments about Mr. Case's assistance because he was one of the attorneys who represented Mr. Patterson at trial, and Mr. Case "would have [had] a conflict of interest if he argued in a post-conviction petition that his trial work was so deficient that it warranted post-conviction relief." (Doc. 49, p. 20) (citing Doc. 29, pp. 91-92).

As discussed, Mr. Kimbrough and Mr. Malcom represented Mr. Patterson before Mr. Case appeared. Mr. Case and Mr. Malcom represented Mr. Patterson at trial. Mr. Case represented Mr. Patterson on direct appeal and then abandoned Mr. Patterson during collateral review. Mr. Patterson's ineffective assistance of trial counsel claim concerns Mr. Kimbrough's and Mr. Malcom's work in the state circuit court. In Mr. Patterson's Rule 32 motion, Mr. Case could have raised an ineffective assistance of trial counsel argument regarding Mr. Kimbrough's and Mr. Malcom's failure to raise a speedy trial argument sooner.

24

Assuming that the Court can consider the evidence from the hearing regarding the timeliness of Mr. Patterson's § 2254 petition and find that Mr. Case's abandonment of Mr. Patterson during the critical stage of collateral review constitutes cause to overcome Mr. Case's failure to raise on collateral review an ineffective assistance of trial counsel argument concerning Mr. Kimbrough's and Mr. Malcom's failure to raise a speedy trial challenge earlier, Mr. Patterson still must show actual prejudice to overcome the procedural default on this claim.   Mr. Patterson contends that he suffered actual prejudice because "there is a reasonable probability that the result of the state prosecution against [him] would have been different . . . if his trial counsel had not rendered ineffective assistance by failing to assert Mr. Patterson's speedy-trial right earlier in the case."  (Doc. 54, pp. 5-6).  Mr. Patterson has not explained

---

Alabama Rule of Criminal Procedure 32.2(d) addresses ineffective assistance of counsel and states:

> Any claim that counsel was ineffective must be raised as soon as practicable, either at trial, on direct appeal, or in the first Rule 32 petition, whichever is applicable. In no event can relief be granted on a claim of ineffective assistance of trial or appellate counsel raised in a successive petition.

Ala. R. Crim. P. 32.2(d).  When Mr. Case filed a "Court of Criminal Appeals Docketing Statement" in the ACCA on March 26, 2014 that listed the issues for direct appeal, (Doc. 25-9, p. 12), Mr. Malcom had not withdrawn; Mr. Malcom withdrew on March 27, 2014, (Doc. 25-9, p. 14). Arguably then, Mr. Case first could have raised an ineffective assistance of trial counsel claim concerning Mr. Kimbrough's and Mr. Malcom's failure to file a speedy trial motion in Mr. Patterson's Rule 32 petition.

25

how the outcome of the speedy trial challenge would have been different had Mr. Kimbrough or Mr. Malcom raised the speedy trial issue earlier.

To establish actual prejudice, the petitioner must show "that the constitutional violation worked to his *actual* and substantial disadvantage." *Shinn*, 596 U.S. at 379-80 (emphasis in *Shinn*) (internal quotations and citations omitted). Mr. Patterson has not made this showing. Mr. Patterson has not shown a reasonable probability that had Mr. Kimbrough or Mr. Malcom filed a motion to dismiss based on a speedy trial violation, the ACCA's decision on the speedy trial issue would have been different. Had Mr. Kimbrough or Mr. Malcom raised the speedy trial issue earlier, the trial court and the ACCA reasonably could have weighed the assertion of right factor in Mr. Patterson's favor and heavily against the State. But, even if the length of delay and assertion of right factors weighed heavily against the State, the reason for delay factor likely would weigh in the State's favor for the reasons discussed. Mr. Patterson admitted at the hearing on his speedy trial motion that the delay was not the State's fault, and the State filed two motions to bring Mr. Patterson's case to trial.

Because fewer than all of the first three *Barker* factors would have weighed heavily against the State, Mr. Patterson still would have to show actual prejudice from the delay. *See United States v. Oliva*, 909 F.3d 1292, 1298 (11th Cir. 2018)

26

(stating that if the first three *Barker* factors weigh heavily against the government, the defendant need not show actual prejudice, the fourth factor).  As discussed, the ACCA reasonably found that Mr. Patterson has not shown actual prejudice from the delay in bringing him to trial.

Because Mr. Patterson cannot show a reasonable probability that the ACCA's decision regarding the speedy trial issue would have been different had Mr. Kimbrough or Mr. Malcom raised a speedy trial challenge earlier, Mr. Patterson cannot show actual prejudice to overcome procedural default on his ineffective assistance of trial counsel claim.[12]

IV.

Because Mr. Patterson's ineffective assistance of trial counsel claim for failure to raise a speedy trial challenge earlier is procedurally defaulted and because

---

[12] Mr. Case's abandonment of Mr. Patterson at the collateral review level did not affect Mr. Patterson's factual development of the merits of the speedy trial issue in the trial court or on direct appeal.  Therefore, the Court does not need further factual development regarding actual prejudice on the ineffective assistance of trial counsel claim.

Because Mr. Patterson cannot overcome procedural default on his ineffective assistance of trial counsel claim, and because the Court cannot reach the merits of that claim, the Court does not address Warden Estess's argument that based on the Supreme Court's decision in *Shinn v. Ramirez*, 596 U.S. 366 (2022), this Court "'may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record'" when determining the "'merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied.'"  (Doc. 50, p. 13) (quoting *Shinn*, 596 U.S. at 382, 389).

Mr. Patterson cannot show actual prejudice to overcome the default, the Court denies

Mr. Patterson's habeas petition.[13]


      **DONE** and **ORDERED** this March 24, 2026.

_Madeline H. Haikala_

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

[13] Mr. Patterson filed a *pro se* § 2254 petition. In his most recent brief, with the assistance of the Federal Public Defender, Mr. Patterson indicates that his only cognizable federal habeas arguments are for a violation of his Sixth Amendment right to a speedy trial and for ineffective assistance of trial counsel for failing to raise a Sixth Amendment speedy trial violation sooner. (Doc. 53, p. 3). Construing Mr. Patterson's *pro se* petition liberally, if the Court may do so now that Mr. Patterson has counsel, Mr. Patterson alleged a speedy trial claim, (Doc. 1, p. 11; "There was a four year delay before trial[.]"), and an ineffective assistance of trial counsel claim, (Doc. 1, p. 10; his lawyer "did not do his job").

In his *pro se* habeas petition, Mr. Patterson asserted that there was no probable cause or valid warrant to arrest him, (Doc. 1, pp. 8-9); the criminal investigation relied on hearsay and biased evidence, did not include ballistic or forensic testing, and contained no proof that Mr. Patterson fired the pistol, (Doc. 1, pp 8, 10, 12, 13, 14, 15, 17); there was no "burden of proof" because he was intoxicated and did not remember shooting the victim, (Doc. 1, p. 10); the victim lied about Mr. Patterson's activities in 2009 and 2010, and a witness lied during his 2013 trial, (Doc. 1, p. 10); the evidence was insufficient to convict him, (Doc. 1, p. 11); the State did not provide witness statements before trial, (Doc. 1, p. 12); and investigators did not verify a witness's alibi, (Doc. 1, p. 13). Because his recent brief does not address these claims, Mr. Patterson has forfeited them. *See King v. Warden, Georgia Diagnostic Prison*, 69 F.4th 856, 877 (11th Cir. 2023) (finding that "ordinary forfeiture rules, under which a party forfeits an argument by failing to adequately brief it, apply to habeas proceedings in the district court"). To the extent that these claims challenge state-court decisions on state grounds and do not raise cognizable federal habeas claims, the Court denies them. *See Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law.") (internal quotations and citations omitted). To the extent that Mr. Patterson did not raise these claims in the state court, making the claims unexhausted, because Mr. Patterson cannot now raise the claims in state court, the claims are procedurally defaulted. Mr. Patterson has not shown actual prejudice to overcome procedural default on these issues. *See Shinn*, 596 U.S. at 378-79.